JOHN McNULTY, PLAINTIFF IN ERROR, *v.* JOHN BATTY, ROBERT SHAW, DANIEL WANN, AND THOMAS C. LEGATE.

Where a case had been brought up to this court from the Supreme Court of the Territory of Wisconsin, and was pending in this court at the time when Wisconsin was admitted as a State, the jurisdiction of this court over it ceased when such admission took place.

Provision was made in the act of Congress for the transfer, from the Territorial courts to the District Court of the United States, of all cases appropriate to the jurisdiction of the new District Court; but none for cases appropriate to the jurisdiction of State tribunals.

By the admission of Wisconsin as a State, the Territorial government ceased to exist, and all the authority under it, including the laws organizing its courts of justice and providing for a revision of their judgments in this court.

The act of Congress passed in February, 1848, supplementary to that of February, 1847, applies only to cases which were pending in the Territorial courts, and does not include such as were pending in this court at the time of the admission of Wisconsin as a State.

Even if Congress had directed the transfer, to the District Court of the United States, of cases appropriate to the jurisdiction of State courts, this court could not have carried its judgment into effect by a mandate to the District Court.

THE facts in this case are stated in the opinion of the court. It was submitted on printed arguments by *Mr. May,* for the plaintiff in error, and *Mr. Carlisle,* for the defendants in error.

*Mr. May's* argument was as follows.

This case comes here by writ of error to the Supreme Court of Wisconsin Territory.

In the District Court of Iowa County, on the 3d of November, 1845, the plaintiff in error sued out his writ of attachment, in an action of debt against the defendants in error, founded on his affidavit (according to the law and practice of that Territory).

The sheriff seized certain goods and chattels of one of the defendants, to wit, Legate, which, on motion, were ordered by the court to be sold.

The defendants, at the next term of said court, on the 4th of

March, 1846, appeared by their counsel, and moved for a rule on plaintiff to file his declaration within three days, which was denied.

At the next term of the court, the plaintiff, by leave of the court, filed his declaration, containing three counts. The first upon a judgment against the defendants, recovered in the State of Illinois. The second on a bill of exchange, drawn by one of the defendants and accepted by the others. The third upon an account for goods, wares, and merchandise.

The defendants moved the court to strike out all the said counts except the first, on account of a variance, because the action was founded on the affidavit, which stated the judgment alone as the cause of action, which motion was granted; whereupon the defendants pleaded, and after several pleas, replications, and demurrers, issue was joined by agreement of the parties, and the cause tried by the court.

The plaintiff read a record of a judgment of the Circuit Court of Illinois.

The defendants then offered to read the record of the same case in the Supreme Court of Illinois (which showed a reversal of the judgment of the Circuit Court). The plaintiff objected to the offering of this record, because it was not properly authenticated, but the court overruled his objection, and he excepted.

Judgment was rendered for the defendants, by the District Judge.

Plaintiff moved for a new trial, and filed his reasons, which was denied.

The case was carried by writ of error to the Supreme Court of Wisconsin Territory, where the judgment of the District Court was affirmed.

The plaintiff in error will contend here, that the judgment of the said Supreme Court ought to be reversed, because, —

First, the District Court erred in striking out the counts of the declaration as aforesaid, after defendants had appeared to the action. Statutes of Wisconsin concerning Attachments, § 7. Rowen v. Taylor, Wisconsin Reports, July term, 1842. He ought to have pleaded in abatement. McKenna v. Fisk, 1 Howard, 241 ; 11 Wheaton, 280.

Second, the record of the said Supreme Court of Illinois was not duly authenticated, so as to be used as evidence in said suit, and ought not to have been received.

The certificate of Samuel H. Treat does not certify that the attestation of the clerk " is in due form," and styles him clerk of " the State of Illinois."

It appears also, on the face of the certificate that the judge

was "an associate justice," while the same record discloses that there was a "chief justice" of said court. 1 Stat. at Large, 122 (Act of May 26, 1790). 2 Stat. at Large, 298.

*Mr. Carlisle's* argument was as follows.

The defendants in error were also defendants below. The action was commenced by attachment, in the District Court of Iowa County, Territory of Wisconsin. The affidavit of the plaintiff, dated 3d November, 1845, sets forth a debt "arising out of, and based and founded upon, a judgment at law," obtained three days before (31st October, 1845), in a county court of the State of Illinois. Pending the attachment, and before the plaintiff had declared, to wit, at the December term, 1845, of the Supreme Court of Illinois, the judgment upon which the attachment was founded was reversed. And this reversal having been pleaded and given in evidence on the trial of the attachment, in Wisconsin, the judgment was for the defendants.

The plaintiff carried the case, by writ of error, to the Supreme Court of the Territory of Wisconsin, where the judgment below was affirmed; and thence the case is brought to this court by writ of error.

The defendants in error will contend that there is no error in either of the points assigned.

1. As to the order to strike out the second and third counts in the plaintiff's declaration, it was addressed to the discretion of the court, and is not subject to be assigned for error. 1 Tidd, 559.

It was not excepted to in the court below.

But if the order can be reviewed here, it was well founded. The proceeding by attachment is regulated by the act of 1838 – 39. (Stat. of Wisconsin, p. 165, § 7.) The affidavit must specify the cause of action, which must be "arising out of, founded upon, or sounding in contract, or upon the judgment or decree of some court of law or chancery." Accordingly, the affidavit sets forth the cause of action as "arising out of, and based and founded upon, a judgment at law," specifying the same. The attachment recites the same, specially and alone. The first count in the declaration is upon this judgment. But the judgment having been reversed in January, 1846, and the plaintiff in the attachment not declaring till October following, two other counts are added to that, upon the judgment; viz. a count upon an instrument described as a bill of exchange, being the same which was merged in and extinguished by the judgment set forth in the first count, and a count for goods sold and delivered, which were the consideration for that "bill of exchange."

The second and third counts were therefore merely frivolous and vexatious, and intended to evade the effect of the reversal of the judgment. And the court properly ordered them to be stricken out.

The second and third counts, if material, could only be so because they were variant from the first count, and consequently variant from the affidavit and the attachment.

2. As to the special demurrer to the defendant's second plea, the plea itself was immaterial. The first plea was *nul tiel record*, and put in issue the existence of the record set forth in the first count; and at the time of that plea pleaded there "was no such record remaining in full force and effect," &c., but the same had been reversed and annulled before the plaintiff filed his declaration. The record of such reversal was admissible in evidence upon the issue joined on that plea. From the time of the reversal "it is no such record *ab initio*." Green *v.* Watts, 1 Ld. Raym. 274; Knight's case, 1 Salk. 329; S. C. 2 Ld. Raym. 1014.

It would appear that the demurrer should have been sustained. But the effect would have been simply an amendment. The plaintiff has not been prejudiced. He could not have recovered. Under such circumstances judgment will not be reversed.

But the plaintiff obtained leave to withdraw his demurrer, and put in a replication. He thereby waived his demurrer, and it cannot be revived here. Craig *v.* Blow, 3 Stew. 448; Peck *v.* Boggis, 1 Scam. 281; U. States *v.* Boyd, 5 How. 29.

3. As to the objection to the admissibility of the record of the Supreme Court of Illinois, it was not specified at the trial. The precise objection was not disclosed till errors were assigned on the writ of error. This court will not now entertain it. Cambden *v.* Doremus, 3 How. 515.

But the objection itself was not well founded. Although the record was not authenticated according to the act of Congress, so as to have effect independently of the local law, yet it was authenticated in such manner and form as to be admissible in evidence in the courts of Wisconsin by virtue of the act of the legislature of that Territory. Statutes of Wisconsin, p. 246; Act concerning Testimony, &c., § 51.

If the points assigned as error shall not have been sufficiently answered above, to the satisfaction of the court, the counsel for the defendants in error further suggests to the court the following objection to the jurisdiction.

Two acts of Congress were passed for the admission of Wisconsin into the Union, viz. Act 3d March, 1847 (9 Stat. at Large, 178); and Act 29th May, 1848 (9 Stat. at Large, 233).

The first act prescribed. a condition, upon compliance with which, and upon the annunciation of such compliance by the President's proclamation, the admission was to take effect. It does not appear that this condition was complied with; and it is supposed that the admission took effect exclusively under the second act, and that its date is the 29th of May, 1848.

The acts of Congress regulating the appellate jurisdiction of this court, and supposed to confer jurisdiction in this case, are 1847, ch. 17, and 1848, ch. 12 (9 Stat. at Large, 128 and 211).

It is the second section of the act of 1848, ch. 12, which contains the general provision as to States thereafter to be admitted into the Union. It makes the provisions of the act of 1847, ch. 17, applicable, "so far as may be," to cases which may be pending in the Supreme Court of any Territory at tne time of its admission, and to cases in which judgments shall have been rendered in such Supreme Court at the time of admission, and not previously removed by writ of error or appeal.

The date of the admission is 29th May, 1848. The date of the judgment in the Supreme Court of the Territory is 31st July, 1847. The citation upon this writ of error was served 4th December, 1847. The record was filed here 29th February, 1848. This case, therefore, was not "pending in the Supreme Court of the Territory" at the time of admission, nor was it a case in which judgment had been rendered there, "and not previously removed by writ of error."

But if it were in either of these categories, the provisions of the act of 1847 do not apply, and cannot "be made applicable." That act gave jurisdiction only in cases where the proceedings below were transferred to the Federal court, to which this court was authorized to send its mandate; and not in cases "legally transferred to the State courts."

The appellate jurisdiction of this court was not intended to be reserved except in cases of "Federal character and jurisdiction." Act 22d February, 1848, § 3.

The sixth section of the act for the admission of Wisconsin provides only for the transfer to the Federal court of the records of judgments, &c., "in cases arising under the Constitution and laws of the United States," which is equivalent language to "cases of Federal character and jurisdiction."

The judgment below is "legally transferred to the State court." It is now a judgment in the Supreme Court of the State of Wisconsin. The record shows that it is not a case of Federal character and jurisdiction. But in such a case only can the mandate of this court go to the State court. (Martin v. Hunter, 1 Wheaton.) And in such cases only do the acts in question provide for the operation of the mandate by transfer-

McNulty *v.* Batty et al.

ring the records below from the. Territorial to the District Courts.

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Supreme Court of the late Territory of Wisconsin. The suit was commenced by a writ of attachment in the first judicial district of that Territory, on the 3d of November, 1845, founded upon a judgment for $ 2747.49 previously obtained against the defendants in a Circuit Court in the State of Illinois. A large amount of property was attached belonging to one of the defendants.

All the defendants appeared by attorney, and put in two special pleas to the declaration, upon which issues were joined; and such proceedings were afterwards had thereon, that at the October term, 1841, judgment was rendered in the said suit for the defendants. The cause was then removed to the Supreme Court of the Territory on error; and at the July term of that court, to wit, on the 31st of July, 1847, the judgment below was in all things affirmed. This judgment has been appealed from to this court, and is now before us for review. The citation is signed the 20th of November, 1847.

The case has been submitted by counsel on written arguments under the fortieth and fifty-sixth rules of the court.

The first question presented is, whether or not this court has jurisdiction to review the judgment below.

The Territory of Wisconsin was admitted into the Union as a State, on the 29th of May, 1848. (9 Stat. at Large, 233.)

An act had been previously passed, on the 2d of March, 1847, assenting to the admission on certain terms and conditions to be first complied with; and providing that upon a compliance with them, and on the proclamation of the President announcing the fact, the admission should be considered complete. The admission did not take place under this act, and no proclamation was issued by the President in pursuance of it.

The people of the Territory again assembled, by a convention of delegates, and formed their constitution, on the 1st of February, 1848, as is recited in the preamble of the act of Congress, passed 29th May, 1848, by the first section of which the State is declared to be admitted into the Union on an equal footing with the original States. The date of the admission, therefore, is the 29th of May, 1848.

The writ of error having been issued on the 20th of November, 1847, was, therefore, regularly issued during the existence of the Territorial government, and the case was pending in this court at the time when that government ceased, and with it

7 *

the jurisdiction and power of the Territorial courts. (Benner *v.* Porter, 9 Howard, 235.)

The fourth section of the act of Congress admitting the State into the Union organized a District Court of the United States for the State (see also § 4 of the Act of 6th August, 1846, 9 Stat. at Large, 57), and the fifth section provided, that the clerks of the District Courts of the Territory should transmit to the clerk of the above District Court "all records of all unsatisfied judgments, and suits pending in said courts, respectively, attaching thereto all papers connected therewith, in all cases arising under the laws or Constitution of the United States, or to which the United States shall be a party"; and the said District Court shall enter the same on its docket, and shall proceed therein to final judgment and execution, as if such suits or proceedings had originally been brought in said court.

The sixth section provides for the delivery by the clerk of the Supreme Court of the Territory to the clerk of the District Court, of all records and papers relating to proceedings in bankruptcy under the late bankrupt act; and also all records of judgments, and of proceedings in suits pending, and all papers connected therewith, in cases arising under the Constitution and laws of the United States.

These sections provide for the Federal cases pending in the courts at the termination of the Territorial government, and for unsatisfied judgments of that character, by transferring them to the Federal court, there to be proceeded in and completed, or executed. But no provision is made for the class of cases pending, and unfinished, that belong to the State judicature after the admission of the Territory into the Union. That class seems to have been left to be provided for by the State authorities. We had occasion to express our views on this subject in the recent case of Benner *v.* Porter, and need not repeat them.

The case before us is one of this character; and is, therefore, unaffected by the transfer of cases to the District Court above provided for. And the question is, whether, under these circumstances, this court has jurisdiction to review it.

By the admission of the State of Wisconsin into the Union, on the 29th of May, 1848, the Territorial government ceased to exist, and all the authority under it, including the laws organizing its courts of justice, and providing for a revision of their judgments in this court by appeals or writs of error. This appellate power does not depend upon the Judiciary Act of 1789; but upon laws regulating the judicial proceedings of

the Territory. And these necessarily ceased with the termina- tion of the Territorial government.

In the case of the United States v. Boisdore's heirs, (8 Howard, 121,) it is said, that, as this court can exercise no appellate power over cases, unless conferred upon it by act of Congress, if the act conferring the jurisdiction has expired, the jurisdiction ceases, although the appeal or writ of error be actually pending in the court at the time of the expiration of the act.

The cases on this point are referred to in the brief in that case, and afford full authority for the principle, if any were needed. (1 Hill, 328; 9 Barn. & Cres. 750; 3 Burr. 1456; 4 Moore & Payne, 341.)

The writ of error, therefore, fell with the abrogation of the statute upon which it was founded.

Besides, since the termination of the Territorial government, there is no court in existence to which the mandate of this court could be sent to carry into effect our judgment. Our power, therefore, would be incomplete and ineffectual, were we to consent to a review of the case. (Palao v. Hunt, 4 Howard, 589.) And, had the records been transferred to the District Court, as in the Federal cases, we do not see but that the result must have been the same: for the case being one not of Federal jurisdiction, should the judgment be affirmed or reversed, and sent down to that court, it would possess no power to carry the mandate into execution, having no power over the case under the Constitution or laws of Congress conferring jurisdiction upon the Federal courts. (Art. 3, § 2, Const. U. S.; Judiciary Act of 1789, § 11.)

There is another act of Congress bearing upon this question which it is material to notice; and that is, an act supplementary to the act entitled "An Act to regulate the exercise of the appellate jurisdiction of the Supreme Court in certain cases, and for other purposes," passed the 22d of February, 1848, ch. 12 (9 Stat. at Large, 211).

The second section provides, "that all and singular the provisions of the said act to which this is a supplement, so far as may be, shall be, and they hereby are, made applicable to all cases which may be pending in the Supreme or other Superior Court of and for any Territory of the United States, which may hereafter be admitted as a State into the Union, at the time of its admission: and to all cases in which judgments or decrees shall have been rendered in such Supreme or Superior Court at the time of such admission, and not previously removed by writ of error or appeal."

The act to which the above is a supplement was passed

22d February, 1847, ch. 17, (9 Stat. at Large, 128,) and its several provisions related to cases pending, and unsatisfied judgments existing in the courts of the Territory of Florida at the time of its admission into the Union as a State, and which were the subject of examination in the case of Benner *v.* Porter, already refered to.

As the Territory of Wisconsin has been admitted into the Union as a State since the passage of this supplementary act, the second section applies the provisions of the Florida act to the cases pending in its courts, and to the judgments existing therein, at the time of its admission.

But it will not be material to refer particularly to those provisions, as this second section does not bring the case before us within them. It applies them to all cases pending in the several courts of the Territory; and to all cases in which judgments or decrees shall have been rendered at the time of the admission, and not previously removed by writ of error or appeal to this court. In this case the judgment had been rendered and removed before the admission, and was pending here at the time; and is, therefore, unaffected by this supplementary act.

The section was drawn, doubtless, under the supposition, that, if the suit was pending here, at the time of the admission of a Territory into the Union as a State, on appeal or writ of error, no legislation was necessary to preserve or give effect to the jurisdiction of the court over it; an opinion, as we have seen, founded in error.

In placing the want of jurisdiction, however, upon this ground, we must not be understood as admitting, that, if the provisions of the Florida act of the 22d of February, 1847, applied to the case, the jurisdiction could be upheld. For, if we are right in the conclusion, that, even assuming the record in the case had been transferred from the Territorial to the District Court of the State, our jurisdiction would still be incomplete and ineffectual, inasmuch as that court possessed no power to carry the mandate into execution, the case not being one of Federal jurisdiction, the result would be the same as that at which we have arrived.

In every view, therefore, we have been able to take of the case, we are satisfied, that our jurisdiction over it ceased with the termination of the Territorial government and laws; and that it has not been revived or preserved, if, indeed, it could have been, by any act or authority of Congress on the subject, and that the writ of error must be abated.

### *Order.*

This cause came on to be heard on the transcript of the rec-

ord from the Supreme Court of the Territory of Wisconsin, and was argued by counsel. On consideration whereof, it is ordered and adjudged by this court, that this writ of error be, and the same is hereby, abated.