### UNITED STATES v. JACOBUS.

### JACOBUS v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. July 18, 1899.)

#### Nos. 117, 118.

APPEAL—ACTION AGAINST UNITED STATES—AMENDMENT OF STATUTE.

Act June 27, 1898, c. 503, amending section 2 of the judiciary act of 1887, which confers on circuit and district courts jurisdiction of suits on claims against the United States, by providing that such jurisdiction shall not extend to cases brought to recover fees, salary, or compensation for official services of officers of the United States, does not affect the provisions of the act amended relating to appeals, and a judgment rendered by a circuit court prior to the passage of the amendatory act, and which is therefore unaffected thereby, may be reviewed on appeal by either party, the circuit court retaining jurisdiction to at least vacate its judgment if held erroneous.

In Error to the Circuit Court of the United States for the Southern District of New York.

These are cross writs of error to review a judgment of the circuit court, Southern district of New York, in favor of John W. Jacobus, heretofore United States marshal of said district, to recover fees or compensation for official services as an officer of the United States. The action was brought under the so-called "Tucker Act" of March 3, 1887, conferring jurisdiction of such claims upon the circuit court. The phraseology of the act is as follows: "Sec. 2. That * * * the circuit courts of the United States shall have [concurrent] jurisdiction [with the court of claims] in all cases where the amount of such claim exceeds $1,000 and does not exceed $10,000." The action was begun in January, 1896. Judgment of the circuit court was entered May 17, 1898, and writs of error sued out in November, 1898. 87 Fed. 99. On June 27, 1898, there was passed an act (chapter 503 of 1898) which amended the second section of the act of 1887 by adding at the end thereof the following: "The jurisdiction hereby conferred upon the said circuit * * * courts shall not extend to cases brought to recover fees, salary, or compensation for official services of officers of the United States, or brought for such purpose by persons claiming as such officers or as assignees or legal representatives thereof." In no other respect is the act of 1887 amended. The United States have moved to dismiss the writ of error on the ground that, inasmuch as it was sued out after the amendment above quoted, this court is without jurisdiction to proceed further in the cause.

D. Frank Lloyd, for the United States.

Henry L. Stimson, for Jacobus.

Before WALLACE and LACOMBE, Circuit Judges, and THOMAS, District Judge.

PER CURIAM. In support of the proposition that upon the repeal of the jurisdiction conferred upon the circuit court to adjudicate such claims in the first instance the jurisdiction of this court to review judgments of the circuit court entered before amendment also determines, several authorities are cited, which do not seem to us, when closely analyzed, to support the proposition. Before discussing them, it may be well to call attention to certain other provisions of the act of 1887. The fourth section provides that:

"The jurisdiction of the respective courts of the United States proceeding under this act, including the right of exception and appeal, shall be governed

by the law now in force, in so far as the same is applicable and not inconsistent with the provisions of this act; and the course of procedure shall be in accordance with the established rules of said respective courts, and of such additions and modifications thereof as said courts may adopt."

Section 9 provides that:

"The plaintiff or the United States shall have the same rights of appeal or writ of error as are now reserved in the statutes of the United States in that behalf made, and upon the conditions and limitations therein contained. The modes of procedure in claiming or perfecting an appeal or writ of error shall conform in all respects, and as near as may be, to the statutes and rules of court governing appeals and writs of error in like causes."

In section 10 there is a clause providing that:

"The attorney general shall determine and direct whether an appeal or writ of error shall be taken or not; and when so directed the district attorney shall cause an appeal or writ of error to be perfected in accordance with the terms of the statutes and rules of practice governing the same."

The same section contains a proviso that:

"No appeal or writ of error shall be allowed after six months from the judgment or decree in such suit."

It seems to be well-settled law—indeed, the district attorney so conceded upon the argument—that, when a final determination by judgment or sentence has been reached before repeal of a statute, such repeal does not affect the judgment. A distinction has been drawn in cases where appeal suspends the judgment, as in admiralty, but the general principle is abundantly supported by authority. See the numerous cases cited in 23 Am. & Eng. Enc. Law, pp. 513, 514. It will be observed that the Tucker act of 1887 most carefully secures both the claimant and the United States against having to submit their controversies to the arbitrament of a single judge. The right of appeal is expressly given, and scrupulously regulated. Under these circumstances, a court should be slow to spell out a repeal by implication of such important provisions so clearly expressed, when the result of such repeal would be to leave the decision of the court of first instance standing as res adjudicata between the parties, with no machinery for reviewing it, or for re-examining into its justice or propriety. As was said before, there has been no express repeal of any of these provisions securing to both sides a right of review.

It may further be noted that the doctrine that a repeal of a statute, the repealing act being silent as to pending cases, takes away all existing rights of action thereunder, even though in suit at the time, was first established where the actions under consideration were brought for penalties or forfeitures. Of this rule Judge Deady, in Eastman v. Clackamas Co., 32 Fed. 33, says that it "is an arbitrary one, and never had anything to commend it, except in the United States an undue sympathy for wrongdoers, and in England an early prejudice among common-law judges against 'statute-made law.'" A more liberal policy was recognized by the federal government when, by the act of February 25, 1871 (now in Rev. St. § 13), it was declared that "the repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred un-

der such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability." It would seem, then, that this court should not, by dismissing these writs of error, deprive either side of any right given by the act of 1887, and not abrogated by express words of repeal, unless constrained to such a conclusion by controlling authority.

The several authorities cited in support of the motion to dismiss may next be considered. In Hunt v. Palao, 4 How. 589, the territorial court of appeals of Florida had rendered judgment in February, 1844. Florida was admitted as a state March 4, 1845, and had passed a law directing the record and papers of the territorial court to be placed in the custody of the supreme court of the state for safe-keeping. In January, 1846, application was made to the United States supreme court for a writ of error to bring up for revision the record and proceedings of the late territorial court. It was refused. The court held that it must exercise its appellate power in the manner prescribed by the statutes; that under these a writ of error "must be directed to the court which holds the proceedings as part of its own records, and exercises judicial power over them." "But," says Taney, C. J., for the court, "the court which rendered the judgment in the case before us is no longer in existence; the proceedings are not in the possession of any court authorized to exercise judicial power over them, but are in the possession of an officer of another court, merely for the purpose of safe custody. * * * If * * * the judgment of the territorial court were found to be erroneous, and reversed, still there is no tribunal to which we are authorized to send a mandate to proceed further in the case, or to carry into execution the judgment which this court may pronounce." In the case at bar the circuit court is still in existence, still in possession of its records, and, if the right of appeal is not abrogated by the later statute, still possesses sufficient judicial power over them to obey the mandate of this court to the extent at least of vacating an erroneous judgment. Benner v. Porter, 9 How. 235, does not apply. Libelant in that case began suit in a territorial court of first instance after the admission of Florida as a state had abrogated all jurisdiction of the territorial courts. In McNulty v. Batty, 10 How. 72, a writ of error had been taken to the United States supreme court from the territorial court of Wisconsin, and was pending in that court when Wisconsin was admitted as a state. The court calls attention to the fact that its appellate power in such causes does not depend upon the judiciary act of 1789, but upon laws regulating the judicial proceedings of the territory. "These [laws] necessarily ceased with the termination of the territorial government. * * * The writ of error, therefore, fell with the abrogation of the statute upon which it was founded." It is impossible from the statement of facts in Insurance Co. v. Ritchie, 5 Wall. 541, to determine whether the statute conferring jurisdiction upon the circuit court was repealed before or after judgment in that court. The syllabus would seem to indicate that repeal was before judgment. There was no statute giving, in terms, a right of appeal in causes like the

one then before the court, and remaining unaffected by any express repeal. In Assessors v. Osbornes, 9 Wall. 567, the repealing act deprived the circuit court of jurisdiction before it had rendered judgment. The supreme court reversed the judgment, and remanded the cause, with instructions to dismiss the case for want of jurisdiction. No apprehended difficulty as to having its mandate executed seems to have deterred the supreme court from directing the circuit court to reverse its judgment. In Re Hall, 167 U. S. 38, 17 Sup. Ct. 723, the repealing act expressly provided that the original act conferring jurisdiction "be, and the same is hereby, repealed, and all proceedings pending shall be vacated, and no judgment heretofore rendered in pursuance of said act shall be paid." The distinction between this act and the one now before us is quite manifest. In U. S. v. McCrory, 33 C. C. A. 515, 91 Fed. 295, the court of appeals, Fifth circuit, upon the authority of the case last cited, abated a writ of error sued out under circumstances in all respects the same as in the case at bar. The court admits that the jurisdiction of the circuit court of appeals to review, affirm, modify, or reverse the final decision of the court below was not in terms or directly taken away by the amending statute, but, upon the authority of In re Hall, expresses doubt as to the survival of any power to enforce whatever judgment the appellate court might render.

The decisions above set forth do not seem to be controlling of the case at bar, while in U. S. v. Boisdore's Heirs, 8 How. 113, will be found authority for entertaining and disposing of these writs of error. The facts in the case last cited are these: In 1824 congress passed an act enabling the claimants to lands within the limits of the state of Missouri and territory of Arkansas to institute proceedings in United States district courts to try the validity of their claims. The second section provided that the party against whom the judgment or decree of the district court may be finally given shall be entitled to an appeal within one year from the time of its rendition, to the United States supreme court. The act further provided that any claim which shall not be brought by petition before the said district courts within two years from the passing of the act, or which, after being brought before said courts, shall, on account of the neglect or delay of the claimant, not be prosecuted to a final decision within three years, shall be forever barred. In 1844 congress passed another act, providing, as to certain lands in Missouri, Mississippi, and other states, that "so much of the expired act of 1824 as related to the state of Missouri be, and is hereby, revived and re-enacted and continued in force for the term of five years, and no longer." The Boisdore proceeding was begun in due time, prosecuted to final hearing in the district court within the three years, and appeal was taken within a year from the time of rendition of the judgment. The appeal was pending and unheard on June 17, 1849, when the five-year term provided for in the act of 1844 expired. Thereupon, at the January term in 1850, motion was made to dismiss the appeal on the ground that by the expiration of the five years the supreme court no longer had jurisdiction of the case. But that court called attention to the fact that neither the act of 1824 nor that of 1844 contained any

clause limiting the time within which such court might hear and determine appeals duly taken, and added:

"As there is no clause of limitation applying to the whole act, nor as to the time within which this court shall exercise the appellate power conferred on it, the act of 1824 in this respect is a perpetual one; and, if any appeal were at this day depending, which has been regularly brought up from the state of Missouri or the territory of Arkansas, the court would have jurisdiction to hear and decide it."

Inasmuch as in the case at bar the amending act has not repealed, and has in no way modified, the provisions of the act of 1887 touching appeals, the decision in U. S. v. Boisdore's Heirs is authority for the proposition that this court should hear and determine such appeals when duly taken within the six-months period prescribed by the act of 1887. The motion to dismiss is denied.