# WASHINGTON HOME FOR INCURABLES *v.* AMERICAN SECURITY & TRUST COMPANY.

---

DEEDS; TRUSTS AND TRUSTEES; POWERS; APPEAL AND ERROR.

1. A deed in trust whereby the grantee is to hold the land conveyed as trustee, and the grantor is to have the rents and profits during his life, the grantee to transfer the land in accordance with the directions of the grantor as disclosed in an instrument referred to in the deed, unless ordered and directed by the grantor to convey and transfer the land to other parties, before his death, operates to pass the legal title. (Following *Bunten* v. *American Secur. & T. Co.* 25 App. D. C. 226.)

2. While, in the case of a deed in trust which is in the nature of a testamentary disposition of the property of the grantor embraced in it, the legal effect is different from that of a will, the same rules of construction must be applied to it as in the case of a devise. (Following *Frosch* v. *Monday*, 34 App. D. C. 338.)

3. Where a deed of land in trust to the grantor for his life provides that, upon his death the grantee shall transfer and convey the land in accordance with the direction and wishes of the grantor as set forth in a will of specified date, "unless ordered and directed by" the grantor "to convey and transfer the same, or any part thereof, before his death," the power of appointment reserved by the grantor may be exercised by him by a codicil revoking the will referred to in:

the deed, especially if the surrounding circumstances indicate that such was his intention; and upon the death of the grantor, the devisee named in the codicil, and not the devisee named in the will, will take the property.

4. An appeal to the Supreme Court of the United States from a decision of this court rendered after January 1, 1912, the date of the taking effect of the act of Congress of March 3, 1911 (36 Stat. at L. 1087, chap. 231), known as the Judicial Code, in a case involving more than $5,000, will not be allowed; as the saving section No. 299 of that act, providing that the repeal of existing laws shall not affect any act done, or right accruing or accrued, or any suit or proceeding "including those pending on * * * appeal * * * in any appellate court referred to, or included within the provisions of this act, pending at the time of the taking effect of this act," saved only those causes decided, and in which appeals to the Supreme Court had been perfected, prior to January 1, 1912.

No. 2357. Submitted February 12, 1912. Decided March 4, 1912.

HEARING on an appeal by one of several defendants from a decree of the Supreme Court of the District of Columbia sitting as an equity court, in a suit for the construction of a deed in trust.                                           *Affirmed.*

The COURT in the opinion stated the facts as follows:

A bill in which all the parties at interest were made defendants was filed March 22, 1910, by the American Security & Trust Company, as trustee, seeking construction of a trust, and direction as to its powers and duties in execution thereof.

The bill alleged that Henry E. Woodbury, since deceased, joined by his wife, on November 18, 1903, conveyed to plaintiff as trustee four certain parcels of improved lands in the city of Washington. The trusts are declared as follows:

"The said American Security & Trust Company shall hold the several pieces or parcels of land and real estate as trustee, Henry E. Woodbury, of the party of the first part, to have all of the rents, profits, and emoluments of the same during his life, and after the death of the said Henry E. Woodbury, of the first part, the said American Security & Trust Company, party

of the second part, shall transfer, convey, and dispose of the said lots, land, and real estate in accordance with the terms, directions, and wishes of the said Henry E. Woodbury, of the first part, as set forth fully and explicitly in his last will, bearing date April 11th, 1902, said trust company being executor, unless ordered and directed by the said Henry E. Woodbury to convey and transfer the same, or any part thereof, to other parties, before his death."

That about April 11, 1902, said Woodbury had executed a will naming plaintiff as executor thereof, and thereafter, namely, January 5, 1903, December 21, 1903, February 18, 1904, and December 20 1904, certain codicils thereto. Testator having died, said will and codicils were duly admitted to probate April 12, 1906. Said will of April 11, 1902, contained the following clause, numbered 7:

"After the expenses of my funeral have been paid, and the legacies herein above enumerated have been paid and satisfied, I direct the American Security & Trust Company, trustee, aforesaid, to pay over to the officers or proper representatives of the Washington Home for Incurables, as residuary legatee, all of the balance of my property personal and real, for the sole use, behoof, and benefit of the said Washington Home for Incurables forever, said fund to be kept apart, and known as the Woodbury endowment to the Home for Incurables. This final disposition of my estate is not to be made until after my sister Sallie Woodbury's decease."

The codicil of February 18, 1904, reads as follows:

"Whereas, in clause No. 7 in the said last will and testament, I did devise and bequeath the rest and residue of my estate both personal and real for the sole use, behoof, and benefit of the said Washington Home for Incurables forever, now I do hereby revoke said devise and bequest, and I do hereby devise and bequeath the said rest and residue of my estate both real and personal, share and share alike, unto the Garfield Hospital of the District of Columbia and to the Children's Hospital of the District of Columbia, their successors and assigns forever. I hereby charge my executor with the execution of this devise."

That said Woodbury, on September 12, 1904, executed a deed conveying in fee simple to Mena M. Stevens one of the lots conveyed to the plaintiff as trustee in the said trust deed, which said title was afterwards conveyed by said Stevens to defendant Lotia L. Frank.

That since the death of said Woodbury, plaintiff has been engaged in the administration of his estate and of its duties as trustee in said deed, and has collected about $3,000 in rents from said parcels of land, has paid all of the debts of the testator, and is now ready to deliver the said estate and money to the parties entitled thereto. Plaintiff wishes to be instructed: (1) Whether the deed to Mena M. Stevens is such an order and direction to the trustee to convey the lot to her, as is contemplated by the terms of said deed of trust. (2) Whether the said codicil of February 18, 1904, is operative, by reference, as a part of the head in trust, or falls within the powers therein reserved to the grantor. The prayer is for a decree interpreting and construing said deed in trust, and directing plaintiff how to proceed in the execution thereof. Parties were duly cited, and filed answers asserting their interests. The learned justice presiding in the equity court was of the opinion that the conveyance to Mena M. Stevens was an exercise of the power reserved in said trust deed that could be perfected, and that the codicil substituting the other residuary devisees and legatees for the Washington Home for Incurables was a proper exercise of the power reserved in said deed. In accordance therewith, a decree was entered, so construing the trust, and directing the plaintiff, as trustee, to execute a deed to Lotia L. Frank for the lot described in the deed of Woodbury to Stevens, and a deed conveying to the Garfield Memorial Hospital and the Children's Hospital of the District of Columbia, the remaining three lots described in said trust deed, and also to deliver to them the accrued net rentals of the said three parcels of land, after deducting therefrom the costs of the suit and sum of $300 as compensation to plaintiff's attorneys for services rendered to said trustee.

The facts shown by the evidence and by stipulation are these: April 11, 1902, Henry E. Woodbury executed a will naming

the American Security & Trust Company and his sister, Sallie Woodbury, executors. He constituted the American Security & Trust Company, trustee, directing it to hold and manage all of his estate during the life of his sister, Sallie Woodbury, paying her the net income thereof. He gave to his nephew, Molyneaux Turner, one-fourth interest in a certain lot, a gold watch, and $100. Said lot was directed to be sold, one fourth of the proceeds to be paid to said nephew, and the remainder to be paid to said sister. A bequest of $300 was made to the Oak Hill Cemetery Company, to be used in keeping his burial lot in good condition; $200 was given to the Children's Hospital to endow two beds. Then followed item 7 quoted above making the Washington House for Incurables residuary legatee and devisee. Sallie Woodbury having died, December 18, 1902, the testator, on January 5, 1903, executed a codicil to said will, containing ten items bequeathing legacies to a number of persons and giving his executor, the American Security & Trust Company, 5 per cent of his estate for its services. The trust deed was executed thereafter, namely, November 18, 1903. Another codicil was executed December 21, 1903. In this the testator revoked the devise to his nephew, having purchased the interest formerly devised to him. Several small bequests were made, and the occupation of his house, free from rent, was given to his housekeeper, M. M. Stevens, and his friends S. H. Robison and wife; and his executor was directed to pay them $60 per month during said period, to supply the table. Codicil No. 3 was executed February 18, 1904, confirming his said will, except as to certain items revoked, and declaring that clause 7 be revoked, and the Garfield Hospital and the Children's Hospital were made residuary legatees and devisees. Codicil No. 4, made December 20, 1904, revoked certain provisions made for the Robisons, and directed said Mena M. Stevens and his executor to destroy his letters and papers that were of no value. The deed conveying the lot to Mena M. Stevens was executed September 12, 1904. Dr. Woodbury requested Mr. Blount, the vice president of the American Security & Trust Company, to have this deed prepared. This was done, and the deed was

acknowledged before the assistant treasurer of said company, who was also a notary public. When acknowledged, it was delivered to Mr. Blount to hold until the grantor's death, and then to be recorded. The deed was recorded after the death of Woodbury. Said Mena M. Stevens had kept the house of Dr. Woodbury from December 1902, to the time of his death, January 15, 1905, and rendered valuable services, for which he agreed to make compensation, the amount thereof being left to him. In consideration of her services he assigned her $2,500 in securities, and also executed the deed aforesaid. Dr. Woodbury informed the president of the American Security & Trust Company of his intention to change the residuary devise and bequest to the Washington Home for Incurables, and substitute other charities. The testator died January 15, 1905, and his will with attached codicils was duly probated, after a contest by Molyneaux Turner, of April 12, 1906, Mena M. Stevens conveyed the lot described in the deed from Woodbury to her, to Lotia L. Frank.

Dr. Woodbury and his wife had been separated for years. Her signature to the deed of trust was for the purpose of releasing any claim that she might have to dower.

*Mr. Charles Cowles Tucker, Mr. Henry B. F. Macfarland,* and *Mr. J. Miller Kenyon* for the appellant.

*Mr. William F. Mattingly* and *Mr. Stanton C. Peele* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The deed creating the trust, the construction of which is sought by the bill, operated to pass the legal title to the property therein described for the purposes of the trust and subject to the exercise of the power of revocation therein reserved. *Bunten* v. *American Secur. & T. Co.* 25 App. D. C. 226. The question is whether that power of revocation has been executed

within the meaning of the instrument.   The object is to arrive at the intention of the grantor.   *Frosch* v. *Monday,* 34 App. D. C. 338–345.   Discussing a deed in that case, which, like this, was in the nature of a testamentary disposition of property, it was said by Mr. Justice Van Orsdel, who delivered the opinion of the court: "The intention of the grantor therefore, gleaned from the instrument itself and the conditions existing at the time of its execution, must control in the determination of its legal effect.   While, in a deed of this nature, the legal effect of its execution is different from that of a will, the same rules of construction, however, must be applied to it as in the case of devises.   As was said in *Ware* v. *Richardson,* 3 Md. 505–553: 'It has been urged that more strictness is required in construing deeds than wills, and that, as this is a deed, the technical rules of construction should apply with unbending force.   To this proposition we do not assent.   1 Cruise, Real Prop. 459, says that the same mode of construction is adopted in cases of deeds as in cases of devises, in questions like the present.' "   See also *Jackson ex dem. Ludlow* v. *Myers,* 3 Johns. 388–395, 3 Am. Dec. 504; *Ayer* v. *Ayer,* 16 Pick. 330.   In the light of this rule of construction the question is what was the intent of Henry E. Woodbury expressed in said deed, and particularly in the clause which provides that the trustee "shall transfer, convey, and dispose of the said lots, land, and real estate in accordance with the terms, directions, and wishes of the said Henry E. Woodbury, as set forth fully and explicitly in his last will, bearing date April 11, 1902, said trust company being executor, unless ordered and directed by the said Henry E. Woodbury to convey and transfer the same, or any part thereof, to other parties, before his death."

Two meanings are ascribed to this last clause.   One is that it was intended that the conveyance or transfer should not only be ordered and directed, but executed also, before the death of the settlor of the trust.   The other is that the order and direction only were required to be made before his death.   The first construction is technical and strict.   The second is equitable, and expresses what we think was the real intention.

The form or mode of this order and direction is not pre-scribed, and the question is whether it could be given by will as well as by deed.  We think that it was the intention of the settlor, disclosed in the language used and in the light of all the surrounding circumstances, that the direction could be given by will as well as in any other way.

Everything done by the grantor indicated his intention to re-tain the use and benefit of his entire estate during his life. This is clearly shown by the recitals of the deed in trust, and by his express direction that the deed to Mena M. Stevens should not be delivered until his death.  He knew, of course, that a will did not take effect until the death of the testator, and was subject to change and complete revocation.  While he did not revoke the original will, he made radical changes in the disposi-tion of his property through codicils thereto attached, the first one of which, though not referred to in the trust deed, had been duly executed sometime before its date.  This construction of the power has the support of well-considered cases.  *Burbank* v. *Sweeney,* 161 Mass. 490–492, 37 N. E. 669; *Cueman* v. *Broadnax,* 37 N. J. L. 508–513.

In *Burbank* v. *Sweeney* the question was the construction of the clause of a will as follows:  "The remainder of my estate I leave for my wife, to dispose of as she may deem expedient; but in the event that she should make no disposition of the same during her lifetime, I give the remainder of my estate not dis-posed of as above to my heirs at law."  The widow disposed of the estate by will, and the question was whether her power to dispose of the property was limited to conveyances to take effect during her life.  The court held that it was not so limited, and that the will was an effective disposition of the state dur-ing her lifetime, within the meaning of the testator.  The later cases, cited by the appellant (*Ford* v. *Ticknor,* 169 Mass. 276, 47 N. E. 877; *Woodbridge* v. *Jones,* 183 Mass. 549, 67 N. E. 878), do not conflict with the former.  They turn upon the nature of the estate actually devised, which being found to be a life estate only, it followed that the devisee could convey only the estate which she had.  In *Cueman* v. *Broadnax,* supra, Peter

Campbell had conveyed property to be held upon trust, to permit the grantor and his wife, Mary, to use the premises and receive the rents and profits thereof during the life of the grantor, and after his death to hold the same in trust to the sole use of said Mary and his heirs forever.　And upon the further trust to execute, deliver, etc., at the request in writing of the said Mary, any deed or deeds whereby to convey to such persons as she may appoint and direct the whole or any part of said premises.　Mary died in the lifetime of her husband leaving a will, duly executed, containing a clause directing the trustee that in case Peter C. Bogart should survive said Peter Campbell, or leave issue surviving him, he should convey the property held in trust for her to said Peter C. Bogart, or his issue, as the case may be.

A conveyance was made to Bogart under that request, and ejectment was brought by the heir at law of said Mary against defendants, holding under the deed to Bogart.　The title was held to be in the defendants.　The court said: "The defendants do not claim as devisees under the will.　The paper, even if inoperative to pass the estate by way of devise, may still be good as an appointment, which is the mere exercise of the power to designate the persons who are to take the beneficial use of the estate.　It is not questioned that the power must be exercised in precise compliance with the directions of the instrument by which it was created; but where a power is given generally, without defining the mode by which it must be exercised, it may be exercised either by deed or will.　Nor is it necessary that the power should be executed by deed,—a simple note in writing would be a good exercise of the power.　1 Sugden, Powers, 247–262; *Heath* v. *Withington,* 6 Cush. 497.　In this case no particular instrument was designated by the terms of the trust deed; it only required that the request should be in writing."

The cases of *Baltimore* v. *Williams,* 6 Md. 235, and *Bath & Mountague Case,* 3 Ch. Cas. 55, relied on by the appellant, present very different states of facts.

In *Baltimore* v. *Williams* the facts were these substantially: Mrs. Chase, the owner in fee of the lot of land involved,

executed a deed thereto to be held upon the following trusts:
(1) That the grantor and her assigns should be permitted during her life to occupy, use, and enjoy the estate, and to take
and enjoy the rents and profits, and apply the same as she saw
proper. (2) From and after her decease, to hold the same
for the several uses and trusts, and subject to the same limitation and restrictions declared in her last will, bearing date
November 10, 1836, and three codicils thereto, giving their
respective dates. Thereafter she conveyed the land to one
Banks. No power of revocation was contained in the trust
deed, and the court held that when a deed conveys land in
trust for such uses as are declared in a will already made,
neither the deed nor the will, in that respect, is revocable, unless a power of revocation is reserved in the deed.

In *Bath & Mountague's Case*, the deed recited that it was
the intent and design of the deed to dispose of the estate conveyed according to the disposition made in his will previously
executed. It contained a power of revocation to the effect
that it should be lawful at any time to revoke, upon the tender
of a shilling, by writing under hand and seal in the presence
of six witnesses, three of whom were to be peers of the realm,
and then to limit new uses. A subsequent will gave the bulk
of the estate to another devisee, but it was attested by but three
witnesses, none of whom was a peer of the realm. This, it
was held, was not an execution of the power, and was not therefore a revocation. The rationale of the decision is disclosed
in the following extract from the opinion of Lord Chief Justice Holt (3 Ch. Cas. p. 107): "A man voluntarily makes
a settlement to the use of himself for life, and after to other
uses, and reserves no power of revocation at all; he cannot revoke this: no, not in equity. And the reason is the same as to
the power reserved, where it is not pursued; for he has no other
right to do it but by the power; and it is as if he did it without
a power, unless he makes a due use of such a power as he had."
It was not questioned that the power of revocation could be
executed by will as well as by deed, provided the attestation

should be in conformity with the power of revocation reserved.

The appellant was the residuary devisee in the will of April 11, 1902, but the clause was revoked by a subsequent codicil naming the Garfield Hospital and the Children's Hospital as residuary devisees in its stead. As this codicil was an execution of the power of revocation reserved in the trust deed, the appellant took no title thereby, and is entitled to no relief.

This renders it unnecessary to consider the second question in the case; namely, whether the conveyance to Mena M. Stevens, who was a creditor of the grantor, was such a partial execution of the power as would be perfected by a court of equity. The appellees all concede that it was, and have acquiesced in the decree to that effect.

Believing that the decree was right, it will be affirmed. The cost of this appeal to be paid by the American Security & Trust Company, trustee, out of the fund in its hands derived from the income of the trust estate, as provided in the decree appealed from. It is so ordered.          *Affirmed.*

An application by the appellant for the allowance of an appeal to the Supreme Court of the United States was denied March 11, 1912, Mr. Chief Justice SHEPARD delivering the opinion of the Court:

The appeal in this case from the supreme court of the District was perfected, and the record filed in this court, prior to January 1, 1912.

The appellant has made an application for an appeal to the Supreme Court of the United States. The value of the property in controversy is shown to exceed $5,000.

The right to the appeal is claimed under sec. 299 of the "Act to Codify, Revise, and Amend the Laws Relating to the Judiciary," approved March 3, 1911 [36 Stat. at L. 1169, chap. 231], and taking effect January 1, 1912, which reads as follows:

"The repeal of existing laws, or the amendments thereof, embraced in this act, shall not affect any act done, or any right

accruing or accrued, or any suit or proceeding, including those pending on writ of error, appeal, certificate, or writ of certiorari, in any appellate court, referred to or included within the provisions of this act, pending at the time of the taking effect of this act, but all such suits and proceedings, and suits and proceedings for causes arising, or acts done, prior to such date, may be commenced and prosecuted within the same time, and with the same effect, as if said repeal or amendments had not been made."

While the language of the section is somewhat involved, we think it is but a saving clause intended to preserve the jurisdiction already acquired by perfecting an appeal allowed under the repealed law. Had the act, of which this section is a part, taken away the appellate jurisdiction of this court in this class of cases, the section would have preserved the jurisdiction acquired before the act took effect. It is argued that the section could only have been intended to preserve the right to appeal to the Supreme Court of the United States in all cases pending in this court in which the right of appeal was given under the repealed law, because it is argued that no saving clause in the repealing act was needed to apply to cases then pending in the Supreme Court on appeal or writ of error. The argument is untenable. The settled rule is directly the opposite. *United States* v. *Boisdore,* 8 How. 113–121, 12 L. ed. 1009–1012; *McNulty* v. *Batty,* 10 How. 72–81, 13 L. ed. 333–336; *Norris* v. *Crocker,* 13 How. 429–440, 14 L. ed. 210–214; *Merchants' Ins. Co.* v. *Ritchie,* 5 Wall. 541–544, 18 L. ed. 540–542; *Ex parte McCardle,* 7 Wall. 506–514, 19 L. ed. 264, 265; *United States* v. *Tymen,* 11 Wall. 88–95, 20 L. ed. 153–155; *Baltimore & P. R. Co.* v. *Grant,* 98 U. S. 398–401, 25 L. ed. 231, 232. In the last case cited the statute, at the time the writ of error was sued out, provided that final judgments, orders, and decrees of the supreme court of the District might be re-examined, and reversed or affirmed in the Supreme Court of the United States upon writ of error or appeal, where the matter in dispute shall be of the value of $1,000 or upward, exclusive of costs, etc. A judgment for

$2,250 was before the appellate court upon writ of error, and depending therein when the former act was amended requiring the amount in dispute to be in excess of $2,500. The writ of error was dismissed. Chief Justice Waite, delivering the opinion of the court, said: "It is equally well settled that if a law conferring jurisdiction is repealed without any reservation as to pending cases, all such cases fall within the law. [Citing the cases supra, and others.] Sec. 847 of the Revised Statutes relating to the District of Columbia, is in irreconcilable conflict with the act of 1879. The one gives us jurisdiction when the amount in dispute is $1,000 or more; the other in effect says we shall not have jurisdiction unless the amount exceeds $2,500. It is clear, therefore, that the repealing clause in the act of 1879 covers this section of the Revised Statutes. The act of 1879 is undoubtedly prospective in its operation. It does not vacate or annul what has been done under the old law. It destroys no vested rights. It does not set aside any judgment already rendered by this court under the jurisdiction conferred by the Revised Statutes when in force. But a party to a suit has no vested right to an appeal or a writ of error from one court to another. Such a privilege once granted may be taken away, and if taken away, pending proceedings in the appellate court stop just where the rescinding act finds them, unless special provision is made to the contrary. The Revised Statutes gave parties the right to remove their causes to this court by writ of error and appeal, and gave us the authority to re-examine, reverse, or affirm judgments or decrees thus brought up. The repeal of that law does not vacate or annul an appeal or a writ already taken or sued out, but it takes away our right to hear and determine the cause, if the matter in dispute is less than the present jurisdictional amount."

We are constrained to deny the appeal in this case. The mandate will be withheld until further order, to give the applicant a reasonable time to apply for relief to the Supreme Court of the United States, if so advised.          *Appeal denied.*

The appellant applied to the Chief Justice of the Supreme Court of the United States for the allowance of an appeal to

that court, and the application was referred by the Chief Justice to the court, which on April 29, 1912, in an opinion by Mr. Justice Holmes, denied the application.